IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Herbert Graham, )  | |
|     Plaintiff, ) | |
| ) | |
| v. ) | 1:08cv308 (LMB/JFA) |
| ) | |
| Y. Aponte, <u>et al.</u>, ) | |
|     Defendants. ) | |

FILED FEB - 2 2009 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

## <u>MEMORANDUM OPINION</u>

Herbert Graham, a federal inmate proceeding <u>pro se</u>, filed this civil rights action pursuant to <u>Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), against defendants Yolanda Aponte, Joseph Coakley and Vanessa Adams, all of whom are staff members at the Federal Correctional Complex at Petersburg, Virginia ("FCC Petersburg"). Graham alleges that defendants violated his Eighth Amendment right to be free of cruel and unusual punishment by failing to provide him with orthopedic shoes in a timely manner. Am. Compl. at 2. On August 1, 2008, defendants filed a Motion to Dismiss and a Motion for Summary Judgment, a memorandum in support of those Motions, and Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309, 310 (4th Cir. 1975) and Local Civil Rule 7(K). On August 26, 2008, plaintiff filed a Memorandum of Points and Authorities in opposition to both of defendants' dispositive motions. Defendants filed a Reply Memorandum in support of their motions on August 29, 2008, and plaintiff filed a sur-reply on September 18, 2008. For the following reasons, defendants' Motion for Summary Judgment will be granted, and summary final judgment will be entered in their favor on plaintiff's

Eighth Amendment claim.[1] Their Motion to Dismiss thus will be denied as moot.

## I. Background

Exhibits supplied by the parties reveal the following uncontroverted facts. Beginning on February 15, 2006, plaintiff was incarcerated at FCC Petersburg. Def. Memo. Ex.1 He received a medical screening that same day, and made no complaints. Def. Memo. Ex. 1, Att. 1 at 3. On February 17, 2006, Graham was transferred to the Low Security Correctional Institution at Petersburg, and at his medical intake screening he again made no mention of any medical complaints. Id. at 4. On March 30, 2006, Graham first informed a mid-level practitioner ("MLP"), or physician's assistant, at that facility that he suffers from a discrepancy in the length of his legs, and that as a result he must wear orthopedic shoes with a 3/8" heel lift. Am. Compl. ¶¶ 1-2. Graham stated that previously he had been issued "special shoes" at a different institution, and that he had undergone back surgery. Def. Memo Ex.1, Att. 1 at 3. Upon examining plaintiff, the MLP noted good range of motion, flexibility, and strength, no swelling, and no gross deformity of Graham's legs. The MLP referred plaintiff for a follow-up appointment with a specialist, and educated him on leg and back exercises. Id.

On April 18, 2006, plaintiff submitted an informal administrative remedy request to his Unit Team, asserting that the medical staff had not complied with his request for special shoes. Compl. Ex.C; Am. Compl. at 4; Def. Memo. Ex.2. Plaintiff specified that he wished to be provided with size

---

[1] Initially there was some question as to whether Graham also intended to assert a claim under the Federal Tort Claims Act ("FTCA"), so the defendants in their motion for summary judgment argued for judgment in their favor on that claim as well. Def. Memo. at 23-28. However, in his Memorandum of Points and Authorities opposing defendants' motion, plaintiff makes it clear that his suit is "a Bivens action and not a medical malpractice action[]." Plf. Memo. at 2. Since no FTCA claim is being asserted, the defendants' position on that cause of action need not be addressed.

11 soft shoes with a 3/8-inch lift in the right shoe. Id. On April 24, 2006, plaintiff was informed by his Unit Team that his request for special shoes had been referred to appropriate staff. Id.

On May 17, 2006, plaintiff was seen by an orthopedic specialist and received approval for a 3/8-inch heel lift. Am. Compl. at 4-5. Graham asked if he could have soft shoes and the specialist stated he would have no problem ordering such shoes, but they would have to be approved by defendant Aponte. Id. On May 31, 2006, the Warden's office received an administrative remedy request from plaintiff, complaining that Aponte had not approved his request for special shoes. Compl. Ex.C; Def. Memo. Ex. 3. On June 29, 2006, defendant Coakley responded to the request by informing Graham that the request for soft shoes had been approved and the shoes had been ordered. Compl. Ex. C; Def. Memo. Ex. 4. The shoes were delivered to Graham on July 27 or 28, 2006. Def. Memo. Ex. 1, Att. 2; Def. Memo. Ex. 1, Att. 1 at 16. Thus, from the time Graham first requested special shoes and a heel lift on March 30, 2006, approximately four months elapsed until he received them.

Meanwhile, on July 13, 2006, Graham appealed the Warden's response to his formal grievance, contending essentially that he had not been provided with special shoes and a heel lift in a timely manner. Compl. Ex.C; Def. Memo. Ex. 5. On October 31, 2006, the Regional Director denied Graham's appeal of the Warden's administrative remedy, noting that the relief Graham sought - special orthotic shoes and the return of two co-payment fees - already had been granted to him. Compl. Ex.C; Def. Memo. Ex. 6. Plaintiff appealed the Regional Director's response to the Central Office in Washington, D.C., Compl. Ex.C; Def. Memo. Ex. 7, and the appeal was denied on February 7, 2007, on the basis that Graham had received all of the relief he sought. Compl. Ex.C; Def. Memo. Ex. 8.

3

Also during this period, plaintiff made a number of complaints concerning medical issues arguably related to his leg length discrepancy, which were addressed by prison medical staff.[2] On July 10, 2006, Graham complained of chronic pain in his hip, back and groin. Def. Memo. Ex. 1, Att. 1 at 11. He was given an appointment for the following day, when he was examined and treated by medical staff. Id. On July 31, 2006, plaintiff complained of chronic pain in his hip and pelvis. Def. Memo. Ex. 1, Att. 1 at 15. He was seen on August 1, 2006, at which time a notation was made that Graham had received custom-made shoes on July 28, 2006. Id. Graham complained again of chronic back pain and swelling in his groin on September 22, 2006, Def. Memo. Ex. 1, Att. 1 at 19, and he was examined and treated by medical staff on September 26, 2006. Id. at 20. On January 5, 2007, Graham submitted another complaint of back and hip pain, and he was examined and prescribed medication that same day. Def. Memo. Ex. 1, Att. 1 at 27. On June 22, 2007, Graham was seen by a specialist in the orthopedic clinic regarding his ongoing complaints of back pain. Def. Memo. Ex. 1, Att. 3. The report of that consultation indicates that Graham had back surgery in 2002 and surgery on his left hip as a child in 1976. Id. In addition, it was noted that Graham suffers from degenerative disease of his lumbar spine, and he refused surgical intervention at that time. Id. The specialist recommended that Graham perform back exercises, and his report noted no discrepancy in the length of Graham's limbs. Id. On November 5, 2007, Graham was transferred to FCI Butner,

---

[2] Records supplied by the defendants indicate that, in addition, Graham sought and received medical attention twenty-five times for a variety of other medical issues during the eighteen months he was incarcerated at FCI Petersburg. Def. Memo. Ex. 1, Att. 1. Those additional complaints are not directly relevant to the subject matter of this lawsuit. However, the promptness with which Graham's various complaints were addressed, and the number of times he was prescribed medication and referred to specialists, belie his attempt to portray himself in his complaint as generally ignored by the medical staff at the Petersburg facility.

his current place of incarceration.[3]

## II. Standard of Review

In reviewing defendants' Motion for Summary Judgment, the Court must view the facts in the light most favorable to the party opposing the motion. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Summary judgment is appropriate where there is "no genuine issue as to any material fact and [] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When a motion for summary judgment is properly made and supported . . . [by affidavits], an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

## III. Analysis

### A. Inadequate Medical Care

Prisoners are entitled to reasonable medical care and can sue prison officials under the Eighth Amendment if such care is constitutionally inadequate. Estelle v. Gamble, 429 U.S. 97, 104-05

---

[3] As noted above, plaintiff filed a Memorandum of Points and Authorities to serve as a reply to defendant's Motion to Dismiss and Motion for Summary Judgment. Plaintiff's pleading consists essentially of a memorandum of law, including citations to case authority, and does not include evidence to create a genuine issue with any of the properly-supported material facts just discussed.

(1976). However, to establish that inadequate medical treatment rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105; see also Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Under this standard, a prisoner must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need or condition. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must allege deliberate indifference to that serious medical need. To establish deliberate indifference, a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

For this second prong, an assertion of mere negligence or malpractice is not enough to constitute an Eighth Amendment violation. Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Instead, "[t]he official must be both aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990). Further, "[a] complaint that a physician has been negligent in diagnosing . . . a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 106 (1976). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier,

896 F.2d at 851. However, the prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted).

In this case, plaintiff has failed to meet his burden on summary judgment of establishing any genuine issue of material fact for trial. First, plaintiff fails to allege facts sufficient to demonstrate the objective component of the Eighth Amendment analysis, namely that the discrepancy in the length of his legs and his resultant need for a heel lift in one shoe constitute a serious medical need or condition. A prisoner, such as plaintiff, meets his burden of presenting a serious medical need by alleging facts sufficient to show that his need has been diagnosed by a physician as mandating treatment and is "so obvious" that even a lay person would easily recognize the need for a doctor's attention. Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D.Va. 1995). Where, as here, the claim involves only a delay in, rather than an outright denial of, the requisite treatment, a plaintiff must show that the delay caused him to suffer a life-long handicap or permanent loss. Id. at 1037; see also, Monmouth County Correctional Institution Inmates v. Lanzano, 834 F.2d 326, 347 (3d Cir. 1987). The Fourth Circuit Court of Appeals is clear that "[o]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003).

Here, the discrepancy in the length of plaintiff's legs which requires a 3/8-inch lift in one shoe is not a sufficiently serious medical need or condition to satisfy the objective component of an Eighth Amendment claim. When evaluated in the context of Fourth Amendment precedent, plaintiff's orthopedic condition simply does not rise to the level of severity which has been held to comprise a "serious medical condition." Cf. Cooper, 815 F.2d at 945 (intense pain from untreated

bullet wound); Loe, 582 F.2d at 1291 ("excruciating pain" of untreated broken arm). Moreover, Graham does not allege, and the medical records supplied by the defendants do not indicate, that the four months it took for plaintiff to be supplied with his orthotic shoes caused him to suffer "a life-long handicap or permanent loss." Cf. Monmouth County, 834 F.2d at 347. Thus, the objective component of the Eighth Amendment analysis is not met here.

Further, even if it had been established that Graham was suffering from a sufficiently serious medical condition, or that the delay in treating that condition had caused a life-long handicap or permanent loss, plaintiff has failed to come forward with evidence to show that the defendants were deliberately indifferent to his needs. To the contrary, the evidence discussed above indicates that the medical staff at FCI Petersburg, including defendants Aponte and Coakley,[4] were responsive to each and every medical complaint submitted by plaintiff, including those of back and hip pain which arguably could have been due to his leg length discrepancy and need for special shoes. Although Graham clearly believes that his needs were not met with sufficient alacrity, such a disagreement over the course of medical treatment does not give rise to Eighth Amendment liability. Wright, 766 F.2d at 849. Since nothing in the record remotely suggests that the care provided to plaintiff for his orthopedic condition was "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness," Miltier, 896 F.2d at 851, the subjective component of an Eighth Amendment claim likewise is not met in this case.

---

[4] Defendant Aponte was involved in plaintiff's medical care only to the extent that she was responsible for approving plaintiff's request for special shoes. Am. Compl. at 4-5. Defendant Coakley's only involvement was his written response to Graham's request for administrative remedy, informing Graham that he had been approved for soft shoes and that they had been ordered and were awaiting delivery. Compl. Ex. C. Defendant Adams, the Warden of FCI Petersburg during plaintiff's incarceration there, had no personal involvement of any kind in his medical care.

B. Respondeat Superior and Conspiracy

Even if Graham otherwise had stated a claim for an Eighth Amendment violation in this case, defendant Warden Adams could have no liability to him for it. Plaintiff does not allege, and none of the evidence indicates, that Adams had any personal involvement in plaintiff's allegedly deficient medical care. Instead, Graham attempts to subject Adams to liability by virtue of her supervisory position as Warden of the institution, and pursuant to vague and generalized allegations that she conspired with the other defendants to delay his receipt of his special shoes. Neither of these avenues of attack is sufficient to maintain a claim against defendant Adams.

It is well established that a Bivens cause of action is only available against federal officers in their individual capacities. See FDIC v. Meyer, 510 U.S. 471, 484-86 (1994); see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (liability in a Bivens case is "personal, based upon each defendant's own constitutional violations.") (internal citations omitted). Accordingly, in order to establish liability in a Bivens case, plaintiff must allege the particular acts taken by each defendant which violate his constitutional rights. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Further, plaintiff must show some kind of personal involvement on the part of the defendant and a causal connection to the harm alleged, see Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986), and respondeat superior cannot form the basis of a claim for constitutional violations in Bivens cases. Rizzo v. Good, 423 U.S. 632 (1976). Thus, to the extent that Graham attempts to hold Adams liable based upon her supervisory position, he has failed to state a cause of action.

To the extent that Graham seeks to hold Adams liable as a conspirator with the other defendants to deprive him of adequate medical care, his assertions are devoid of factual support and are entirely conclusory. As such, they are insufficient to withstand the defendants' properly-

supported motion for summary judgment. Pachaly v. City of Lynchburg, 897 F.2d 723, 725 (4th Cir. 1990) (party opposing properly-supported motion for summary judgment cannot rest on conclusory statements, but must provide specific facts showing a genuine issue, particularly when that party bears the burden of proof); Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994)(unsubstantiated, conclusory claims without evidentiary support insufficient to satisfy a non-moving party's burden on summary judgment).

C. Qualified Immunity

Defendants also assert that even if they otherwise would be liable to plaintiff for his claim, they are entitled to qualified immunity for their actions. Given that defendants have established their entitlement to judgment as a matter of law on plaintiff's claim against them, it is unnecessary for the Court to address defendants' arguments on the question of qualified immunity.

IV. Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgment will be granted, and summary final judgment will be entered in their favor. Defendants' Motion to Dismiss will be denied, as moot. An appropriate Order and judgment shall issue.

Entered this 2ND day of February 2009.

/s/
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia